Melody L. Sequoia, Esq. (SBN: 309163)
Email: melody@sequoialawfirm.com
**THE SEQUOIA LAW FIRM**
530 Oak Grove Ave., Suite 102
Menlo Park, California 94025
Office: (650) 561-4791
Facsimile: (650) 561-4817

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| CHI, JUSTIN<br><br>                              Plaintiff,<br><br>v.<br><br>TOP APPLICANT, INC. d/b/a ELEVATE and ELEVATE HIRE, LEIF TECHNOLOGIES, INC.,<br><br>          Defendants. | **Case No.**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF AND DECLARATORY RELIEF**<br><br>1. Declaratory Relief (28 U.S.C. § 2201)<br>2. Violation of the Truth in Lending Act (15 U.S.C. § 1601 *et. seq.*)<br>3. Violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200)<br>4. Violation of the California False Advertising Law (Cal. Bus. & Prof. Code § 17500)<br>5. Violation of the Rosenthal Fair Debt Collection Practices Act (Cal. Civ. Code § 1788 *et. seq.*)<br>6. Negligent Misrepresentation<br>7. Unjust Enrichment<br><br><br>JURY TRIAL DEMANDED |

Plaintiff Justin Chi, by and through his attorney hereby submits this Complaint against Defendants Top Applicant, Inc. d/b/a Elevate and Elevate Hire, and Leif Technologies, Inc., and alleges as follows.

## PRELIMINARY STATEMENT

1.     This case is filed to stop a coordinated effort by a for-profit education provider and a student loan servicer from unfairly trapping unsuspecting job seekers into unconscionable multi-year student loans that they did not want or need, and thereafter harassing and threatening students when they try to challenge those agreements.

2.     Defendant Top Applicant, Inc., d/b/a Elevate and Elevate Hire ("Top Applicant/Elevate"), operates a 10-week online tech sales bootcamp that purportedly provides training services to individuals looking for entry-level technology sales positions (which, by definition do not require training).   Top Applicant/Elevate makes money off its students by partnering with Defendant Leif Technologies, Inc.—a company that designs, implements, and services educational income share agreements, or ISAs.   ISAs, an alternative to traditional student loans, obligate a borrower to pay a percentage of his or her future income after the student completes the training or withdraws from the program.   However, ISAs can be exorbitantly expensive.   Many of the ISAs Defendants use require students to pay 10% of their *gross* salary for many years, for a total of up to $17,000 for just 10 weeks of online courses.

3.     To rope unsuspecting job seekers into applying for the program (and eventually signing an ISA), Top Applicant/Elevate falsely advertises its program as a job *opening* (with a salary and benefits), thereby misleading prospective applicants into believing that they are submitting a job application (which they are not).   Top Applicant/Elevate further lures prospective applicants into applying for the program by making lofty promises or guarantees of employment and income

that are wholly illusory and that are intended to obscure the true nature of the ISAs that it is hoping the prospective applicants will sign. Once students apply and are accepted based on these misrepresentations, Top Applicant/Elevate further disguises what it is actually selling applicants by sending them personal emails presenting the ISA as merely an account setup document that must be signed right away to "lock in" the applicant's seat "asap." The consumer has no idea that they are signing an oppressive and unconscionable agreement to have Leif effectively garnish their wages for years.

4.      To make matters worse, Defendants concealed the fact that Top Applicant/Elevate appears to be an out-of-state private postsecondary educational institution that is operating in violation of the registration requirements of the California Education Code provisions specifically designed to prevent unaccredited for-profit entities from engaging in unfair and deceptive business practices. Because Top Applicant/Elevate is not authorized to operate in this State, the ISAs that Defendants are coercing California borrowers to sign are not enforceable pursuant to Education Code § 94917.

5.      Leif is the linchpin of Top Applicant/Elevate's scheme, facilitating, servicing, and collecting substantial sums of money from Plaintiff and other California borrowers under Top Applicant/Elevate's illegitimate ISAs. On top of Leif's unlawful collection efforts, Top Applicant/Elevate's CEO, Mr. Norman Rodriguez, has harassed Plaintiff and others by sending students who do not pay threatening and harassing emails that refer to former students as "fools," tells them to "man up" and "swallow your pride and embarrassment." These actions call into question the quality of instruction and implicitly admit that Defendants tricked its students into financial obligations.

6.      Plaintiff seeks, among other things, a declaration that Top Applicant/Elevate's ISAs are not enforceable because Top Applicant/Elevate is not

authorized to operate in the State of California.  Plaintiff further seeks public injunctive relief restraining and enjoining Defendants from collecting on or enforcing any ISAs with California borrowers, restitution, disgorgement of all monies wrongfully collected pursuant to unenforceable ISAs, and attorney fees and costs pursuant to California Code of Civil Procedure § 1021.5.

7.    In addition, Plaintiff brings this action under the Truth in Lending Act (15 U.S.C. § 1601 *et. seq.*) and Regulation Z (12 C.F.R. § 1026 *et. seq.*) against Top Applicant/Elevate for failure to give the required loan disclosures in advertising and before extending credit, as well as the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200) and the California False Advertising Law (Cal. Bus. & Prof. Code § 17500) stemming from Defendants' unlawful, unfair, and fraudulent conduct concerning the ISAs sold to students. Defendants have also each violated the Rosenthal Fair Debt Collection Practices Act in connection with their attempts to collect money from Plaintiff under an unenforceable ISA.  Plaintiff seeks public injunctive relief restraining and enjoining these and other violations, actual damages, statutory damages, punitive damages, attorney fees and costs, and all other available relief.

**JURISDICTION AND VENUE**

8.    This Court has jurisdiction under 15 U.S.C. § 1640(e) and 18 U.S.C. § 1331, as this case involves questions of federal law.  This Court has authority to issue a declaratory judgment by virtue of 18 U.S.C. § 2201.

9.    This Court also has jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

10.    This Court has supplemental jurisdiction over the related state law claims pursuant to 18 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution.  Plaintiff's

state law claims share all common operative facts with his federal law claims, and the parties are identical.  Resolving Plaintiff's claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

11.     Venue is proper in the Central District of California under 28 U.S.C. § 1391(b) because all or most of the events or omissions giving rise to the claims occurred in this District and because Defendants are subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

### A.     The parties

12.     Plaintiff Justin Chi ("Mr. Chi") is a natural person and at all relevant times has resided in Los Angeles County, California. Mr. Chi enrolled in Defendant Top Applicant/Elevate's tech sales bootcamp in January of 2021. Mr. Chi withdrew from the program before completing it, after he obtained a job he had applied for before participating in Top Applicant/Elevate's program.

13.     Defendant Top Applicant, Inc. ("Top Applicant/Elevate") is a for-profit vocational school incorporated in Delaware[1] which sometimes uses the unregistered trade name "Elevate" or "Elevate Hire."  Top Applicant/Elevate appears to operate from a private residence at 381 East Barbarita Avenue, Gilbert, AZ 85234.[2] Top Applicant/Elevate, offers a 10-week online tech sales bootcamp ("SDR Bootcamp") that enrolls students in California and nationwide. "Tech sales" refers to selling software or technologies to individual and business consumers. Top Applicant/Elevate's founder and CEO is Norman Rodriguez ("Mr. Rodriguez").

14.     Defendant Leif Technologies, Inc. ("Leif") is a Delaware foreign

---

[1] *Entity Information: Top Applicant*, Arizona Corporation Commission, https://ecorp.azcc.gov/BusinessSearch/BusinessInfo?entityNumber=23178938 (last accessed December 15, 2021).

[2] *Entity Information: Top Applicant*, Arizona Corporation Commission, https://ecorp.azcc.gov/BusinessSearch/BusinessInfo?entityNumber=23178938 (last accessed December 15, 2021).

COMPLAINT

stock company with its headquarters in New York.   Leif partnered with Top Applicant/Elevate to design, implement, and service Income Share Agreements ("ISAs") on behalf of Top Applicant/Elevate.[3] Plaintiff is informed and believes, and thereon alleges, that the ISAs are drafted by Leif.

**B.      Top Applicant/Elevate uses deceptive online "job postings" to lure individuals into enrolling in a for-profit SDR bootcamp.**

15.     Top Applicant/Elevate aggressively recruits students in California and nationwide who are looking for entry-level jobs as Sales Development Representatives ("SDRs"). SDRs are responsible for outbound prospecting—*i.e.*, they research and reach out to new clients directly who might be interested in the products sold by the company for which they work.

16.     Top Applicant/Elevate's bootcamp ("SDR Program") purports to train their students for SDR positions, although SDR positions are entry-level and by definition do not require prior training or experience.

17.     "Elevate" and/or "Top Applicant" regularly post advertisements for its tech sales bootcamp in the form of job postings on LinkedIn and Craigslist.   While Top Applicant does not appear to have a LinkedIn page, Elevate's LinkedIn page represents that it is located in San Francisco, California—though tellingly it does not provide a street or mailing address there.   This misrepresentation creates the impression that the company is located at the epicenter of the technology industry, making it more desirable to those seeking to break into that sector.   However, Elevate appears to be an unregistered trade name of Top Applicant, which according to secretary of state documents, is located at a personal residence in Arizona.

18.   An example of one such "Elevate" posting on LinkedIn is attached hereto as **Exhibit A.**   The job posting reflected in Exhibit A represents that

---

[3] https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=04065099-27712003 (last accessed December 15, 2021).

accepted applicants for a full-time position as a SDR would make a base salary of $60,000 - $82,000, with dental, vision, and medical insurance. These representations, in the context of a job posting, create the false impression that the applicant will be employed by Elevate—the company that posted the job. By clicking the "apply now" button, would-be applicants can submit their resume to Top Applicant/Elevate without ever understanding that they are not applying for a paying job, but rather for an expensive 10-week bootcamp.

19. Plaintiff is informed and believes and thereon alleges that substantially similar (if not identical) job postings were posted on Linkedin and Craigslist in locations throughout the United States and were specifically designed to state (falsely) that there were job openings near where the prospective applicant resided.

20. Plaintiff came across a similar Top Applicant "job posting" on LinkedIn in late December of 2020 while searching for a SDR position. That posting states that Top Applicant was "seeking 10 sales reps" and that if accepted, the applicant would "begin immediately as an SDR" with a compensation range between $60,000 and $82,000. A copy of the Top Applicant Job posting viewed by Plaintiff on or about December of 2020 is attached hereto as **Exhibit B.**

21. Mr. Chi would not have applied to the SDR Program if he had not seen the LinkedIn posting, and if he had known that it was an expensive "bootcamp," not an actual job.

22. Top Applicant/Elevate's false advertising of its SDR Program as a job opening violates the California Education Code. Education Code § 94897 provides that an institution (defined as "any private postsecondary educational institution, including its branch campuses and satellite locations"[4]) shall not do any of the following:

---

[4] California Education Code § 94843.

(c) Advertise concerning job availability… unless the information is accurate and not misleading.

(f) Solicit students for enrollment by causing an advertisement to be published in 'help wanted' columns in a magazine, newspaper, or publication, or use 'blind' advertising that fails to identify the institution."

23.    Top Applicant/Elevate's so-called "job postings" violate the California Education Code because they contain inaccurate and misleading information concerning job availability.  In fact, the ads are not for any job at all, but rather, they are for an expensive "training" program.  The advertisements are also improper attempts to solicit students via "help wanted" publications.

24.    Moreover, advertising the SDR Program as a "job posting" is particularly unfair because the consumers that Top Applicant/Elevate target are individuals (typically young people) who are in the process of searching job boards and postings and identifying multiple companies seeking entry-level SDR positions.  Acceptance to what they believe is a SDR job is particularly alluring to these jobseekers and makes them more likely to sign a contract quickly without knowing that they are or will enter into in oppressive contracts for training that does not actually provide the necessary "training" for the entry-level positions they were seeking.

**C.    Top Applicant/Elevate uses false and misleading statements regarding a "Placement Guarantee" to lure individuals to sign up for its for-profit bootcamp and sign expensive income share agreements which obligate them to pay 10% of their gross income for years.**

25.    To further lure students to the SDR program, Top Applicant/Elevate, illegally advertises lofty promises or "Placement Guarantee" of employment in violation of the California Education Code.  *See* California Education Code § 94897 ("An institution shall not do any of the following: … (b) Promise or

guarantee employment, or otherwise overstate the availability of jobs upon graduation.")

26.    For example, Top Applicant/Elevate's website and Linkedin page states:

> "[W]e guarantee that as an Elevate Member, you will land a role earning $60k+ in tech within 12 months of finishing first tier of the program."

> "We're so confident in our program that we guarantee you land a $60k+ job within the first year of completing Tier 1."

> "The average time to land a role is six weeks, so what are you waiting for?"

> "If you're humble, ambitious, and curious, the Elevate community will launch you into the fast track of tech sales, earning over $60,000+ in year 1 and over $150,000 by year 3."[5]

27.    Plaintiff viewed the representations concerning Top Applicant/Elevate's job placement guarantee in January of 2021.

28.    Top Applicant/Elevate's representations concerning job placement and salary "guarantees" are false and misleading. The purported "guarantee" does not actually promise to return money or refund students if certain conditions are not met, as is expected and/or typical with a conventional consumer moneyback guarantee or satisfaction guarantee.

29.    Instead, Top Applicant/Elevate failed to disclose and actively concealed the fact that the purported "guarantee" is actually vaguely referring to the terms in an oppressive and unconscionable type of financial product known as

---

[5] https://elevatehire.co/whyelevate (last visited December 15, 2021) (https://perma.cc/Z2JM-53GM);
https://elevatehire.co/financing (last visited December 15, 2021) (https://perma.cc/VN94-U3ZC);
https://elevatehire.co/how-it-works (last visited December 15, 2021) (https://perma.cc/J9HA-Y945);
https://www.linkedin.com/company/elevatehire-co/about/ (last visited December 15, 2021) (https://perma.cc/DFV7-WN2A).

an income share agreement, or ISA.

30.   An ISA typically has a minimum income level to trigger payment obligations, meaning if the student is making less than a certain amount, payments are either deferred or, in some cases, not owed.  It is not a "guarantee" of anything as that term is commonly understood.

31.   Top Applicant/Elevate's Placement Guarantee omits material information about what an ISA is and what the terms of that financial instrument are.  At their core, ISAs are a consumer financial product in which consumers promise to pay a percentage of their future income following withdrawal or graduation from the program.

32.   Top Applicant/Elevate, and its service provider Leif, have tried to evade regulatory oversight by claiming that ISAs are not loans or credit, but that claim is false and misleading too.  Substantively, ISAs are no different from traditional student loans in which a student's account is credited and no money is due up front for tuition or fees and in exchange, the student promises to repay the tuition at a later time (*i.e.*, after graduation or after leaving the program).

33.   In fact, recently the California Department of Financial Protection and Innovation ("DFPI") issued a consent order with one ISA servicer, like Defendant Leif, finding that ISAs used to finance postsecondary education are "loans" for purposes of California's Student Loan Servicing Act.[6]  The Consumer Protection Financial Bureau ("CFPB") recently made similar findings about ISAs under federal law. On September 7, 2021, the CFPB issued a consent order with Better Future Forward, Inc. ("BFF"), a company that (like Leif) provides students with ISAs to finance postsecondary education. *In the Matter of Better Future Forward,*

---

[6] *In the Matter of Student Loan Servicing Act License Application of Meritas Inc.* NMLS No. 2120180, Consent Order at ¶ M (Ca. Dep't of Fin. Prot. and Innovation Aug. 5, 2021), *available at:* https://dfpi.ca.gov/wp-content/uploads/sites/337/2021/08/Meratas-Consent-Order.pdf (last visited December 15, 2021).

*Inc., et al.*, No. 2021-CFPB-0005, Consent Order at ¶ 1 (Sept. 7, 2021). In no uncertain terms, the CFPB found that "ISAs are loans and do create debt." *Id.* ¶ 23.

34.    By marketing the ISA in the context of a "Placement Guarantee" promising gainful employment in the technology field, Top Applicant/Elevate engaged in deceptive acts and practices and made untrue and deceptive statement in advertising.

35.    Plaintiff reasonably relied on these representations regarding job placement.  He would not have enrolled in the SDR Program had he known that the Placement Guarantee was actually an expensive ISA.

**D.    Further disguising what it was actually selling students, Top Applicant/Elevate fraudulently presented the ISA as merely a Leif "application & account setup document."**

36.    Once consumers like Plaintiff initially applied to Top Applicant/Elevate's deceptive job postings or other advertisements, the company, along with Leif, engaged in further unfair and deceptive practices to lock students into expensive ISAs without fully disclosing what the actual nature of an ISA is, let alone the terms of that ISA.

37.    For example, after Mr. Chi submitted his resume to "Elevate" through LinkedIn, he received the following email from Mr. Norman Rodriguez, attached hereto as **Exhibit C**:

> Hi Justin,
>
> On behalf of the team, I am excited to offer you a seat in the January 2021 (J2021) class of Top Applicants. Congratulations! You earned your seat as one of the top 10% of applicants who applied to the Bootcamp.
>
> As next steps, we'll need you to lock in your seat asap by completing an application on Leif, our ISA provider: Leif - Application & Account Setup
>
> •    Your placement in the Top Applicant SDR Bootcamp is tentative until you complete your account

and accept our calendar invitation. Once this assignment is complete we'll review your reply and get back to you with the final decision on your enrollment.

Talk soon and good luck!

-Norman

38.     This acceptance email creates a false impression that Top Applicant/Elevate's admissions process is selective and numerous other students are waiting to take the consumer's tentative place, and that completing the enrollment process is therefore urgent.

39.     Plaintiff is informed and believes and thereon alleges that the above-quoted email is Top Applicant/Elevate's standard communication to potential students who have been "accepted" into the SDR Program.

40.     The link underlined in Mr. Rodriguez's email above is not for an enrollment agreement or other document "lock[ing] in" his seat, but an application for an ISA through ISA provider Leif.

41.     Plaintiff is informed and believes, and thereon alleges, that Leif is familiar with, and approved, Top Applicant/Elevate's advertising and enrollment practices that trick borrower's into believing that they are "lock[ing] in" their spots in the bootcamp by applying for Leif ISAs.  In fact, on its website, Leif specifically represents to its customer base (for-profit schools), that it has a "simple application process" that "seamlessly integrates with [the school's] workflow."[7]

42.     Mr. Chi completed the ISA application and signed Top Applicant/Elevate's ISA on January 21, 2021, thinking he was securing his spot in an elite program. No information about what an ISA is was ever provided to Mr. Chi.

---

[7] https://leif.org/schools (last visited December 15, 2021) (https://perma.cc/RT5J-BEYB]).

COMPLAINT

**E.      Mr. Chi's Income Share Agreement is Procedurally and Substantively Unconscionable.**

43.     The ISA that Mr. Chi signed is attached hereto as **Exhibit D.**  Plaintiff is informed and believes, and thereon alleges, that other borrowers who applied to Top Applicant/Elevate were required to sign identical or substantially similar ISAs.

44.     The ISA is procedurally unconscionable because it was deceptively presented to him not as an ISA, but as a "Placement Guarantee" and an "application [and] account setup document," as set forth above.

45.     The ISA provides that the borrower would finance the 10-week SDR Program by pledging 10% the students' future pre-tax earnings for 36 months or until all payments total $17,000 (the payment cap), whichever occurs first. *Id*. at ¶¶ 1, 2, 4(a).  Payment is deferred if the borrower earns less than $3,333.33 monthly (or $40,000 annually), and in the event of 60 months of deferred payments (months when the borrower's income does not reach above the income threshold), payment obligations under the ISA are terminated. *Id* at ¶ 4(h).

46.     Not only does the ISA potentially obligate Plaintiff to pay an exorbitant $17,000 for less than 90 days of instruction, but the ISA's other substantive provisions are unconscionable as well for the following reasons:

       i.      ***The ISA requires borrowers to repay the ISA in full even if Top Applicant/Elevate breaches its own obligations***

47.     Section 13 of the ISA, designated "RETAINED RIGHTS," states:

> No breach or the termination of this Agreement will affect the validity of any of your accrued obligations owing to Company under this Agreement.  Notwithstanding termination of the Payment Term, Company shall retain all rights to enforce your obligations under this Agreement, including the right to receive the full amount of your Income Share owing hereunder based on your Earned Income during the Payment Term.

48.    Section 13 of the ISA purports to require the borrower to pay on the ISA even if Top Applicant/Elevate breaches its obligations completely—for example, by failing to provide any instruction or training whatsoever.

49.    This term is therefore deeply unfair, contrary to fundamental contract law in which one party's material breach excuses the other party from continued performance, and unconscionable.

### ii.    *The ISA requires that the borrower open and maintain a "designated bank account" and allow Leif to monitor and track all account activities*

50.    The ISA also comes with oppressive reporting requirements to Leif.

51.    The ISA requires the borrower to open and maintain a "Designated Bank Account" and arrange for the direct deposit of all earned income into that account. Exhibit D at ¶ 4(g).

52.    The borrower must allow Leif to "integrate" the Designated Bank Account into its platform and monitor and track all account activities of the borrower and any dependents or spouses who may also use that account. *Id.* at ¶ 4(f).

53.    If the borrower ever changes the password on his or her bank account, the borrower must provide notice to Leif of that change and "comply with all requests of Leif to integrate the new Designated Bank Account with the Leif Platform." *Id.*

54.    This term is deeply unfair and contrary to California laws intended to give consumers meaningful choice about how their nonpublic personal information is shared by their financial institution, including but not limited to the California Financial Information Privacy Act, Cal. Fin. Code § 4050 *et. seq.*.

### iii.    The ISA omits critical FTC Holder Rule language and replaces it with language that purportedly eliminates defenses to repayment arising out of Top Applicant/Elevate's own wrongful acts

55.    The Federal Trade Commission's (FTC) Holder Rule requires creditors who finance consumers' purchases of their goods and services to include in the financial contract language stating that:

"ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF…." 16 C.F.R. § 433.2(a) (emphasis in original).

56.    This language protects consumers by preserving their rights and ensuring they are not later obligated on contracts induced by fraud or deception that are later sold or transferred to a third party.

57.    ISAs issued to students by their schools are subject to the Holder Rule as "financed sales" because they fall within the definition of "credit sale" under the Federal Truth in Lending Act ("TILA") and regulation Z.[8]

58.    Defendants intentionally omitted Holder Rule language from its ISAs, which is an unfair practice under FTC regulations. 16 C.F.R. § 433.2(a).

59.    Moreover, because the protections of the FTC Holder Rule do not apply automatically, but instead depend on the creditor including the above-quoted contractual language, unscrupulous actors like Defendants have attempted to deprive consumers of important legal rights by violating the Holder Rule and simply omitting the required language.

60.    By intentionally omitting Holder Rule language, Defendants induced borrowers to sign contracts using false, deceptive, and misleading advertising and

[8] *See* Ben Kaufman and Ben Roesch, *Income Share Agreements and the FTC's Holder Rule*, Student Borrower Prot. Ctr. (March 11, 2021), https://protectborrowers.org/wp-content/uploads/2021/05/SBPC_Holder_Rule_Final.pdf.

unfair and deceptive business practices, while simultaneously taking away one of the most, if not the most, effective tools against fraud.   Under these facts, the ISA is unconscionable.

### iv.   *The ISA purportedly changes the terms of the Placement Guarantee used to induce borrowers to sign the ISA in the first place*

61.   As set forth above, Top Applicant/Elevate baited students to apply for the SDR Program by promising (falsely) that students would be responsible for making payments under their ISAs only if they were making $60,000 per year or more, and only if they obtain a job "in tech" or in "tech sales." *See* ¶ 26, *supra*.

62.   But once students "enrolled" by clicking on the "application [and] account setup document" (which was really an ISA agreement), Defendants switched the terms on borrowers. The ISA actually requires payment once borrowers make the "Minimum Monthly Amount," designated as $3,333.33 per month, which is "approximately equal to $40,000 annually."   Exhibit D at 2 (emphasis added).   The ISA also does not contain any debt relief if the student makes more than $40,000 in a ***non***-tech sales role.  In other words, if the borrower obtains any job whatsoever making over $40,000 per year, they are required to pay Defendants 10% of that *gross* salary.

63.   By changing the terms on borrowers, Defendants engaged in a bait-and-switch by advertising financing under which the borrower did not owe money unless they make more than $60,000 per year "in tech," but then requiring payments when the borrower is making more than $40,000 (not $60,000) per year, no matter what job they later obtained, and regardless of whether Top Applicant/Elevate did anything to assist that borrower in obtaining that job.

64.   The ISA also contains an integration clause which provides that the ISA sets forth the "entire agreement and understanding of the Parties" and that it "supersedes all prior or contemporaneous discussions, understandings and

agreements." Exhibit D. at ¶ 23(a). Accordingly, the integration clause purportedly nullifies the Placement Guarantee that induced borrowers like Plaintiff to enroll in the SDR Program and sign the ISA in the first place.

65. Such bait-and-switch tactics used to deceive consumers into signing expensive agreements renders the ISA agreement unconscionable.

### v.   *The ISA contains unconscionable withdrawal provisions in violation of California law*

66. Section 7 of the ISA is innocuously designated "ADDITIONAL PROVISIONS AFFECTING PAYMENTS." Exhibit D at 5. Subsection (d) provides as follows:

> In the event of your withdrawal or other separation from the Program or Training provided pursuant to this Agreement, you **may** be entitled to a pro rata reduction in your Income Share or length of the Payment Term, ***at the sole discretion of Company***. You agree to give Company and Leif prompt notice of your withdrawal from the Program of Training and the effective date of your withdrawal.

Exhibit D at 6 (emphasis added).

67. This provision is contrary to public policy in California and virtually every state that regulates private vocational schools, which set forth minimum standard cancellation and refund policies. *See* Cal. Educ. Code § 94920. These regulations are intended to protect students who withdraw from a school before receiving the benefit of the course of study. In that situation, it would be fundamentally unfair and unconscionable to require the student to pay for the entire course. Yet section 7(d) of the ISA explicitly allows Top Applicant/Elevate to charge students the full ISA amount—10% of their gross earned income for three years—no matter how quickly they withdraw.

**vi.** ***The ISA contains excessively harsh penalties for not accurately reporting earned income, even when done so unintentionally***

68.    The penalties for not accurately reporting earned income—intentionally or not—is excessively harsh and unconscionable.

69.    Under Paragraph 5 of the ISA, Top Applicant/Elevate is authorized to collect up to $1,000 *per month* if the borrower underreports their income—even if the error is unintentional. *Id*. at ¶ 5(b).  That is double the monthly payment for a borrower making $60,000 per year.

70.    The $1,000 per month penalty is contrary to California public policy and is an unenforceable penalty.  The $1,000 fee for not accurately reporting income, even unintentionally, does not bear any rational relationship to the damages Defendants would actually suffer as a result of the error.

**F.    Despite substantial activities in the California, Top Applicant/Elevate is not authorized to operate in the State of California, rendering the California ISAs unenforceable.**

71.    California Education Code § 94801.5(a) states that "an out-of-state private postsecondary educational institution shall register with the [Bureau of Private Postsecondary Education]," or the "BPPE."

72.    Defendant Top Applicant/Elevate provides postsecondary education within the meaning of the Education Code because it claims to be an "educational program whose curriculum is designed primarily for students who have completed or terminated their secondary education or are beyond the compulsory age of secondary education, including programs whose purpose is academic, vocational, or continuing professional education."  Cal. Edu. Code § 94857.

73.    Defendant Top Applicant/Elevate is an "out-of-state private postsecondary institution" within the meaning of the Education Code because it is a "a private entity without a physical presence in this state that offers distance education to California students for an institutional charge, regardless of whether

the institution has affiliated institutions or institutional locations in California." Cal. Edu. Code § 94850.5. Because it purportedly runs its business out of a home in Arizona, Defendant Top Applicant/Elevate is an "out-of-state private postsecondary educational institution."

74. California Education Code § 94801.5(c) provides that an out of state institution's failure to comply with the registration requirement set forth in subsection (a) means that the institution "is not authorized to operate in this state (California)."

75. Top Applicant/Elevate's deliberate failure to register and obtain authorization from the BPPE renders the ISA agreements students signed unenforceable. California Education Code § 94917 provides that any "note, instrument, or other evidence of indebtedness relating to payment for an educational program is not enforceable by an institution unless, at the time of execution of the note, instrument, or other evidence of indebtedness, the institution held an approval to operate." An ISA is a "note, instrument, or other evidence of indebtedness" relating to "payment for an educational program."

76. Top Applicant/Elevate knowingly operated illegally without approval from the BPPE. Therefore, the ISAs issued to Plaintiff and to other California borrowers are unenforceable. Nevertheless, and Top Applicant/Elevate and Leif have collected, and will continue to collect exorbitant sums of money on these unenforceable ISA agreements from California borrowers.

**G.    Top Applicant/Elevate fails to live up to its lofty promises.**

77. Plaintiff enrolled in Top Applicant/Elevate's bootcamp, and signed an expensive ISA, based on promises that were made to him concerning the value of the education he would receive and the types of connections he would make. He was promised a cutting-edge curriculum and hiring network that would sling-shot him into a well-paying job with technology companies.

78.     Plaintiff did not receive what he was promised. The program curriculum was non-existent or underdeveloped and was essentially a guided job hunt.  Indeed, because a SDR position is entry level, no training was actually needed to find a job in the industry.

79.     In the end, Mr. Chi obtained a SDR job based on an application that he submitted *before* attending the bootcamp. Therefore it cannot be said that Mr. Chi benefited from the bootcamp's training.

80.     As a result of these deceptive practices, the majority of students who enrolled in Top Applicant/Elevate's SDR Program withdrew because they were not provided with the educational services promised and/or the program was too expensive and not necessary for them to become gainfully employed. Plaintiff is informed and believes and thereon alleges that of the ten students who started the bootcamp with him, by the end of week two, he was the only remaining student.

81.     Despite the fact that the vast majority of Top Applicant/Elevate students never completed the SDR Program, Leif continues and will continue to enforce the ISAs against Plaintiff and other former and current Top Applicant/Elevate students, unless declaratory or injunctive relief is awarded by this Court.

**H.     Defendants' attempt to collect on students' ISAs using threats and deception.**

82.     When students did not pay on their ISA agreements (either because they could not afford payments, or because they refused to make payments in light of Defendants' unfair and deceptive business practices), Mr. Norman Rodriguez, CEO of Top Applicant/Elevate, responded with threats and false and misleading attempts to collect a debt in violation of the Fair Debt Collection Practices Act and the Rosenthal Act.

83.     Top Applicant/Elevate's violations of the debt collection laws are best

illustrated by the following email sent to Mr. Chi on or about September 19, 2021. An identical email was sent to several other students around the same time who refused to pay:

> Justin,
>
> I understand that you would prefer to simply disappear on us now that you're comfortable in a role. Sadly, you really can't ghost your way out of a financial contract, this isn't a tinder date you are one and done with.
>
> There are two ways this can go from here.
>
> 1) You man up, swallow your pride and embarrassment and contact us to ensure you are in compliance with your Leif contract and make clear you intend to pay the ISA as agreed upon.
>
> 2) You don't step up to the plate and hope this inconvenience just disappears. In that case, we will sell the right to your ISA to a hedge fund that specializes in distressed assets. They will sit on it and do nothing for a while because they know that you probably haven't read it and don't realize that if you remain maliciously out of compliance for a period of time, you then simply owe 100% upfront instead of 10% of your income for X months. Then they will come after you and your employer, as well as wreck your credit score for at least a decade and a half… Trying to skip town will put you in the penalty box for a long time, and you won't be able to get a mortgage, credit card or anything that requires financial trust. This will follow you, your SSN is attached to your ISA.
>
> I get that this is extremely awkward and probably frustrating. A guy like you doesn't like to feel like a fool. But I'd strongly advise not backing yourself into a corner as you currently are. You are making choices that will have consequences.
>
> You have until Wednesday to connect with us or we will go down the road of option #2, and then you are someone else's problem. We get paid either way.
>
> Best,
> Norman

84.    Mr. Rodriguez's threatening message violates State and Federal Law for several reasons.

85.    First, Mr. Rodriguez's statements that Mr. Chi's "probably hasn't

read" the ISA, or that his alleged financial obligations to the school may cause him to feel "embarrassment" or "like a fool" implicitly admits that the school has tricked its students into financial obligations. These statements further acknowledge that (a) Top Applicant/Elevate's business model relies on signing its student up for expensive, multi-year ISAs that the students have not read or understood, and (b) Top Applicant/Elevate does not provide value to the students in exchange for their ISAs.

86.    Second, Mr. Rodriguez falsely asserts that the ISAs are valid and enforceable, when they are not. As explained above, Top Applicant/Elevate was not authorized to operate in California and therefore any debts incurred by their students are unenforceable.

87.    Third, Mr. Rodriguez deceptively overstates the impact of non-payment on students' credit score. The representation that default on the ISA would "wreck [Mr. Chi's] credit for at least a decade and a half" is false and misleading because even a Chapter 7 bankruptcy only stays on a consumer's credit for up to 10 years, and defaulting on a debt does not always result in long-term damage to one's credit. Further, his assertion that Mr. Chi would be unable to get a mortgage or credit card is false and misleading. Defaulting on a debt may have a negative impact on the debtor's credit score, but it does not disqualify them from obtaining any kind of financial obligation like a mortgage, loan, or credit card.

88.    Fourth, Mr. Rodriguez says that Top Applicant/Elevate's assignee can and will "come after [Mr. Chi's] employer." However, the Rosenthal Act explicitly forbids debt collectors from contacting a debtor's employer for any reason other than to locate the debtor, so this statement is not only a misrepresentation of the consequences of default, but also tantamount to a threat against Mr. Chi and Mr. Chi's employer. Additionally, there is nothing in the ISA that purports to hold a student's employer liable for their debt. Implicit in this statement is the threat that

Top Applicant/Elevate will attempt to have Mr. Chi fired from his job if he defaults on the debt, or at the very least, damage his professional reputation.

89.    Fifth, Mr. Rodriguez's threat to sell Mr. Chi's ISA to a "hedge fund that specializes in distressed assets" illustrates that Top Applicant/Elevate's omission of Holder Rule language was deliberately done so Top Applicant/Elevate could skirt any responsibility for its unfair, deceptive, and fraudulent acts by simply selling the ISAs to third parties if students contested their financial obligations.

90.    Mr. Rodriguez's email to Mr. Chi appears to be a template that he uses on a regular basis.  Plaintiff is informed and believes, and thereon alleges, that other students have received this same email from him (often without changing gender pronouns). Putting aside the deceptive and threatening nature of the communication, Mr. Rodriguez's coarse reference to being "one and done" with a Tinder date and his general tone throughout, calls into question the quality of instruction at a bootcamp that promises to teach students how to build relationships with, and sell products to, current and potential customers.

## FIRST CAUSE OF ACTION
### (Declaratory and Injunctive Relief)
### Against All Defendants

91.    Plaintiff realleges and incorporates by reference all the allegations set forth in each of the preceding paragraphs of this Complaint.

92.    Plaintiffs seek a declaration pursuant to 28 U.S.C. § 2201 and 2202, which allows this Court to declare the rights and other legal relations of the parties to this dispute.

93.    Specifically, Plaintiff seeks a declaration that the ISAs entered into while Top Applicant/Elevate was not registered with the California BPPE are not enforceable pursuant to California Education Code § 94917.

94.     An actual controversy has arisen and now exists between the parties concerning the respective rights and duties of the parties under the ISA agreement. On the one hand, Plaintiff contends that any ISA signed by a borrower prior to Top Applicant/Elevate registering with the BPPE is unenforceable.  Defendants, on the other hand, dispute the above contentions, as shown by their attempts to collect Plaintiff's pre-tax income each month, notwithstanding the fact that the school had not registered with the BPPE at the time those ISAs were signed (and has still not registered with the BPPE as of the filing of this Complaint).

95.     A judicial determination of the rights and obligations of Plaintiff and Defendants is necessary and appropriate at this time under the circumstances.

### SECOND CAUSE OF ACTION
**Violation of the Truth and Lending Act (15 U.S.C. § 1601 *et. seq.*)**
**and Regulation Z (12 C.F.R. § 1026 *et. seq.*)**
**Against Defendant Top Applicant/Elevate**

96.     Plaintiff realleges and incorporates by reference all the allegations set forth in each of the preceding paragraphs of this Complaint.

97.     Defendant Top Applicant/Elevate is a "creditor" as defined by 12 C.F.R. § 1026.2(a)(17) because the company regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments (not including a down payment), and to whom the obligation is initially payable on the face of the note or contract.

98.     Top Applicant/Elevate's ISA agreements are "credit" as that term is defined by 12 C.F.R. § 1026.2(a)(14) because the ISA gives the consumer a right to defer payment of a debt or to incur debt and defer its payment.

99.     Top Applicant/Elevate's ISA agreements are "closed-end" credit as that term is defined by 12 C.F.R. § 1026.2(a)(10).  "Closed-end credit" means consumer credit other than open-end credit, and "open-end credit" is defined as "consumer credit extended by a creditor under a plan in which: (i) the creditor

reasonably contemplates repeated transactions; (ii) the creditor may impose a finance charge from time to time on an outstanding unpaid balance; and (iii) the amount of credit that may be extended to the consumer during the term of the plan (up to any limit set by the creditor) is generally made available to the extent that any outstanding balance is repaid." 12 C.F.R. §§ 1026.2(a)(10) and (a)(20).

100.   Top Applicant/Elevate extends closed-end credit to consumers under TILA and Regulation Z because its ISAs do not meet all three criteria for open-end credit.

101.   Top Applicant/Elevate has violated, and is continuing to violate, TILA and Regulation Z in at least the following ways:

*Failing to Make Required Loan Disclosures*

102.   TILA and Regulation Z, subpart C require lenders of closed-end credit to clearly and conspicuously disclose certain repayment terms to consumers in a manner that consumers may keep with them before extending credit. 15 U.S.C. §§ 1631, 1638(a); 12 C.F.R. §§ 1026.17, 1026.18.

103.   In connection with the extension of closed-end credit, Top Applicant/Elevate systematically fails to disclose clearly and conspicuously in writing, in a form consumers may keep, before extending credit, the disclosures required under Regulation Z, subpart C, including but not limited to the disclosures required by 12 C.F.R. § 1026.18(b)-(h), (j)-(l), and (p).

*Failing to Clearly and Conspicuously Disclose Repayment Terms in Advertising*

104.   Advertisements for closed-end credit must also clearly and conspicuously disclose certain repayment terms.  15 U.S.C. § 1664(d); 12 C.F.R. 1026.24.

105.   In connection with the advertisement of closed-end credit, Top Applicant/Elevate's advertisements of its ISA program fail to make any disclosures whatsoever, let alone any disclosures that are clear and conspicuous in violation

Section 144 of TILA, 15 U.S.C. § 1664(d), and Section 1026.24(d) of Regulation Z, 12 C.F.R. §1026.24(d).

106.   Pursuant to 12 C.F.R. § 1026.24(d), if the amount or percentage of any down payment is set forth in an advertisement, then the advertisement must disclose the terms of repayment, which reflect the repayment obligations over the full term of the loan, as well as the "annual percentage rate," using that term, and, if the rate may be increased after consummation, that fact.    12 C.F.R. § 1026.24(d)(2).

107.   Top Applicant/Elevate represented to Plaintiff on its website (and still represents today) that applicants pay "$0 UPFRONT," triggering the requirements of 12 C.F.R. § 1026.24(d)(2).[9] Top Applicant/Elevate does not make the required disclosures under section 1026.24(d)(2)(ii)-(iii) relating to the terms of repayment and the annual percentage rate.

**THIRD CAUSE OF ACTION**
**Violation of California's Unfair Competition Law ("UCL")**
**California Business and Professions Code § 17200, *et. seq.***
**Against all Defendants**

108.   Plaintiff realleges and incorporates by reference all the allegations set forth in each of the preceding paragraphs of this Complaint.

109.   Defendants are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

110.   The UCL defines unfair competition to include any "unlawful, unfair, or fraudulent business act or practice," as well as any "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

111.   By committing the acts and practices alleged herein, Defendant Top Applicant/Elevate has engaged in unlawful, unfair, and fraudulent business acts and practices in violation of the UCL.

---

[9] https://elevatehire.co/financing (last accessed December 15, 2021) (https://perma.cc/VN94-U3ZC).

COMPLAINT

112.   **Unlawful Conduct**:  As a result of engaging in the conduct alleged in this Complaint, Defendants have violated the UCL's proscription against engaging in unlawful conduct by virtue of their violation of state and federal law.

113.   More specifically, Defendant Top Applicant/Elevate has violated the UCL's proscription against engaging in "unlawful" business practices by virtue of its conduct in violation of the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and prohibits the dissemination of any false advertisements (15 U.S.C. § 52(a)), and the Federal Truth in Lending Act (15 U.S.C. § 1601 *et. seq.*) and Regulation Z (12 C.F.R. § 1026 *et. seq.*), as set forth above. Defendant Top Applicant/Elevate has also violated FTC regulations, including 16 C.F.R. § 433.2(a) by intentionally omitting Holder Rule language from its ISAs.

114.   In addition to federal law, Defendant Top Applicant/Elevate has also violated California law.  Top Applicant/Elevate has violated the following California statutes intended to protect consumers generally, and students specifically, from fraud and deceit:

a.   California Civil Code § 1710 (deceit) and California Civil Code § 1572 (actual fraud);

b.   California Education Code § 94897(c), which prohibits a private postsecondary educational institution from making inaccurate or misleading advertisements concerning job availability;

c.   California Education Code § 94897(f), which prohibits a private postsecondary educational institution from soliciting students for enrollment by causing an advertisement to be published in "help wanted" columns in a publication or use advertising that fails to identify the institution;

d.   California Education Code § 94920, which requires private vocational schools to provide minimum cancellation and refund policies;

e.      The California False Advertising Law (Cal. Bus. & Prof. Code § 17500), which prohibits untrue or misleading statements in advertising;

f.      The Rosenthal Fair Debt Collections Practices Act (Cal. Civil Code § 1788 *et. seq.*), which prohibits misrepresentation and deceit in connection with attempts to collect a debt, as well as engaging in other threatening, harassing, or abusive tactics;

g.      California Education Code §§ 94886, 94943, 94801.5(a), and 94801.5(c), which prohibits out-of-state private postsecondary educational institutions such as Top Applicant/Elevate from operating in the state of California (even though distance education) without first obtaining BPPE authorization;

115.   In addition, Defendant Leif has violated the UCL's proscription against engaging in unlawful conduct by virtue of its violation of state and federal law in connection with its design and implementation of Top Applicant/Elevate's ISA program, and in connection with its collection efforts under those unenforceable ISAs.  More specifically, Defendant Leif has violated the UCL's proscription against engaging in "unlawful" business practices by virtue of its conduct in violation of the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce." (15 U.S.C. § 45(a)(1)), and by virtue of its conduct in violation of the Fair Debt Collections Practices Act (15 U.S.C. 1692 *et. seq.*).

116.   In addition to federal law, Defendant Leif has violated California Civil Code §§ 1710 and 1711, California's False Advertising Law (Bus. & Prof. Code § 17500), and the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 *et. seq*, which incorporates the FDCPA by section 1788.17.

117.   Plaintiff reserves the right to allege other violations of law, which constitute other unlawful acts or practices.  Such conduct is ongoing and continues

to this day.

118. ***Unfair Conduct:*** As described above, Defendant Top Applicant/Elevate has engaged in an "unfair" and deceptive business act or practice by, among other things:

a.    Marketing and promoting the SDR Program as a "job posting" with salary ranges and benefits when in fact the SDR program was a 10-week for-profit bootcamp that required the applicant to pay thousands of dollars;

b.    Using false and misleading statements regarding a placement guarantee and/or salary guarantee in order to lure individuals into signing oppressive income share agreements that would obligate applicants to pay 10% of their gross income for years;

c.    Presenting the ISA agreement to applicants as an "account setup document," when that document was actually an oppressive ISA that would obligate applicants to pay 10% of their gross income for years;

d.    Engaging in bait-and-switch tactics by luring students to apply for the SDR Program by promising (falsely) that students would be responsible for making payments under their ISAs only if they were making $60,000 per year or more, and only if they obtained a job "in tech" or in "tech sales," but then switching the terms on students by requiring payments under the ISAs if borrowers were making as little as $40,000 per year in any industry whatsoever;

e.    Marketing and promoting its ISAs as not loans or credit when that statement is false and misleading and has been expressly rejected by regulators;

f.    Failing to give clear and conspicuous disclosures of the repayment terms of the ISA before having applicants sign an ISA;

g.      Failing to offer students any meaningful cancellation or refund policy in the event that the student did not receive the benefit of the course of study;

h.      Imposing excessively harsh penalties ($1,000 per month) on borrowers for unintentional errors in reporting income;

i.      Intentionally omitting Holder Rule language from its ISAs and replacing it with language that purportedly eliminates any defenses to repayment arising out of Top Applicant/Elevate's wrongful acts, including fraud;

j.      Conducting business in the State of California without BPPE authorization;

k.      Failing to provide a meaningful curriculum and qualified instructors as promised; and

l.      Sending threatening messages to former students in an attempt to collect on ISAs that are not enforceable under California law.

119.  As described above, Defendant Leif has engaged in an "unfair" and deceptive business act or practice by, among other things:

a.      Designing,   implementing,   and   managing   Top Applicant/Elevate's illegal and fraudulent ISA program;

b.      Marketing its ISA financial products as not loans or credit when that statement is false and misleading and has been expressly rejected by regulators; and

c.      Attempting to collect on Top Applicant/Elevate's ISA contracts in California notwithstanding the fact that those agreements are not enforceable under the California Education Code because Top Applicant/Elevate's was and still is operating illegally and without the required authorization from the BPPE.

120.   There is no societal benefit from Defendants' conduct—only harm to consumers.   Defendants have engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers, and the gravity of its conduct outweighs any alleged benefits attributable to such conduct.

121.   ***Fraudulent Conduct:*** A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

122.   Top Applicant/Elevate's and Leif's acts and practices alleged above constitute fraudulent business acts or practices because they have deceived Plaintiff and are highly likely to deceive members of the consuming public.

123.   Plaintiff relied on Top Applicant/Elevate's and Leif's fraudulent and deceptive representations.

124.   Plaintiff would not have entered into ISA agreements without Top Applicant/Elevate's and Leif's representations.

125.   ***Unfair, deceptive, untrue, or misleading advertising:*** Top Applicant/Elevate's advertising of the SDR Program and its ISA agreements constitutes unfair, deceptive, untrue, or misleading advertising under the UCL.

126.   Advertising is misleading under the UCL if members of the public are likely to be deceived.

127.   As set forth above, the above-described advertisements depicting the SDR Program as a job posting were communicated to Plaintiff, and the advertisements are likely to mislead a reasonable person into believing that they were applying for a SDR position with either Elevate or Top Applicant, not signing up for an expensive for-profit training program.

128.   In addition, as set forth above, the advertisements concerning the Placement Guarantee were communicated to Plaintiff, and the advertisements are likely to mislead a reasonable person into believing that they were guaranteed a SDR position within one year making above $60,000, and if that did not happen,

1    the borrower would not owe any money. Those statements were false and

2    misleading because the ISA contracts Plaintiff and other students were lured into

3    signing require payments when the borrower is making as little as $40,000 per

4    year, and when the borrower is employed in any industry (not just SDR roles).

5         129.   Plaintiff and other current and former Top Applicant/Elevate students

6    have been injured as a direct and proximate result of Defendants' conduct in

7    violation of the UCL.     Plaintiff and other current and former Top

8    Applicant/Elevate students have suffered injury in fact because as a result of

9    Defendants' unfair and deceptive business practices, Plaintiff was duped into

10   entering into an economic transaction with Top Applicant/Elevate costing money

11   or property that would otherwise have been unnecessary.

12        130.   Defendants' violations of the UCL continue to this day.   Unless

13   restrained and enjoined, Plaintiff and other students who participated in the SDR

14   Program (and who may later participate in the SDR Program) will continue to

15   receive demands for exorbitant amounts of money under the ISA contracts from

16   Leif.

17                          **FOURTH CAUSE OF ACTION**
                  **Violation of California's False Advertising Law ("FAL")**
18               **California Business and Professions Code § 17500, *et. seq.***
                        **Against Defendant Top Applicant/Elevate**
19

20        131.   Plaintiff realleges and incorporates by reference all the allegations set

21   forth in each of the preceding paragraphs of the Complaint.

22        132.   California Business and Professions Code § 17500 broadly proscribes

23   "untrue or misleading statements in advertising," including any statement made

24   "over the Internet," which is known to be untrue or misleading, or which by the

25   exercise of reasonable care should be known to be untrue or misleading, in

26   connection with the performance of services.

27        133.   The FAL also prohibits omissions of material fact when the omissions

28

are contrary to a representation made by the defendant, or where the defendant was obligated to disclose the omitted material facts.

134.   Defendant Top Applicant/Elevate provides a service to consumers in which consumers sign up for "training" services.  Exhibit D at p. 1.

135.  In advertising the SDR Program as a job posting, Top Applicant/Elevate made untrue and misleading statements in advertising.  Further Top Applicant/Elevate failed to disclose that the SDR Program was not in fact a job posting, but instead was an expensive training program.  These omissions were directly contrary to Top Applicant/Elevate's representation that Elevate and/or Top Applicant had open tech sales positions that it wanted to fill.

136.  In marketing and promoting the ISA in the context of a Placement Guarantee promising gainful employment in the technology field making over $60,000, Top Applicant/Elevate made untrue and misleading statements in advertising.  Further, Top Applicant/Elevate failed to disclose the fact that the ISA on which the Placement Guarantee was loosely based actually required applicants to pay 10% of their gross income (up to $17,000) regardless of whether the applicant obtained a job in tech or tech sales, and even if the student made $40,000 or more.  These omissions were directly contrary to Top Applicant/Elevate's representations concerning its Placement Guarantee.

137.  Top Applicant/Elevate had full knowledge of each material fact it failed to disclose, and the company actively concealed those facts.  Further, Plaintiff did not know the omitted material facts and, by nature of those facts, Plaintiff could not have discovered the omitted facts.

138.  Plaintiff has suffered injury in fact as a result of the actions as set forth herein because he enrolled at Top Applicant/Elevate and signed an ISA agreement in reliance on Top Applicant/Elevate's false and misleading claims.

139.  Top Applicant/Elevate and Leif have profited from their collection

efforts under the ISA contracts and continue to collect on those agreements.

140.   Top Applicant/Elevate's violations of the FAL are ongoing and will continue unless this Court enters injunctive relief.

141.   As a result, pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff is entitled to public injunctive relief, equitable relief, and restitution.

**FIFTH CAUSE OF ACTION**
**Violation of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA")**
**California Civil Code § 1788 *et. seq.***
**Against all Defendants**

142.   Plaintiff realleges and incorporates by reference all the allegations set forth in each of the preceding paragraphs of the Complaint.

143.   Plaintiff's financial obligations allegedly owed under the ISA contracts at issue in this case is a "debt" and a "consumer debt" as those terms are defined by the RFDCPA, Cal. Civil Code § 1788.2(d) and (f).

144.   Plaintiff is a "debtor" as that term is defined by the RFDCPA, Cal. Civil Code § 1788.2(h).

*Defendant Leif's Violations of the Rosenthal Act:*

145.   Defendant Leif is a "debt collector" as that term is defined by the RFDCPA, Cal. Civil Code § 1788.2(c).

146.   For the reasons set forth above, the ISA contracts signed by Plaintiff and others are void and unenforceable because Top Applicant/Elevate does not have BPPE authorization to operate in the State of California, as required by the California Education Code.

147.   By collecting and attempting to collect the amounts under Top Applicant/Elevate's ISA contracts, Leif violated the RFDCPA.  Leif's violations include, but are not limited to, the following:

a.   misrepresenting the character, amount, or legal status of the debt, in violation of 15 U.S.C. § 1692e(2)(A), incorporated into state law by

California Civil Code § 1788.17;

b.      misrepresenting the compensation which may be lawfully received by Leif and/or Top Applicant/Elevate for the collection of the debt, in violation of 15 U.S.C. § 1692e(2)(B), incorporated into state law by California Civil Code § 1788.17; and

c.      attempting to collect interest, fees, or other charges from Plaintiff that are not expressly authorized by the agreement creating the debt or otherwise permitted by law, in violation 15 U.S.C. § 1692f(1), incorporated into state law by California Civil Code § 1788.17.

148.   Leif's acts as described herein were done willfully and knowingly with the purpose of coercing Plaintiff to pay the debt, as that term is defined by Cal. Civil Code § 1788.30(b).

*Top Applicant/Elevate's Rosenthal Act Violations:*

149.   Defendant Top Applicant/Elevate is a "debt collector" as that term is defined by the RFDCPA, Cal. Civil Code § 1788.2(c).

150.   Top Applicant/Elevate, through its CEO Norman Rodriguez, violated the RFDCPA in at least the following ways:

a.      Threatening that nonpayment of the consumer debt would result in garnishment or attachment of wages of the debtor when such action was not in fact contemplated by the debt collector or permitted by the law in violation of section 1788.10(e) of the RFDCPA and section 15 U.S.C. § 1692e(4), incorporated into state law by California Civil Code § 1788.17;

b.      misrepresenting the character, amount, or legal status of the debt, in violation of 15 U.S.C. § 1692e(2)(A), incorporated into state law by California Civil Code § 1788.17;

c.      misrepresenting the compensation which may be lawfully received by Leif and/or Top Applicant/Elevate for the collection of the debt,

in violation of 15 U.S.C. § 1692e(2)(B), incorporated into state law by California Civil Code § 1788.17;

      d.    attempting to collect interest, fees, or other charges from Plaintiff that are not expressly authorized by the agreement creating the debt or otherwise permitted by law, in violation 15 U.S.C. § 1692f(1), incorporated into state law by California Civil Code § 1788.17;

      e.    Making the false representation that a consumer debt has been, or is about to be, or will be sold, assigned, or referred to a debt collector for collection in violation of California Civil Code § 1788.13(k);

      f.    making the false representation or implication that accounts have been turned over to innocent purchasers for value in violation is 15 U.S.C. § 1692e(12), incorporated into state law by California Civil Code § 1788.17;

      g.    engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the collection of a debt in violation of 15 U.S.C. § 1692d, incorporated into state law by California Civil Code § 1788.17; and

      h.    Using obscene or profane language in violation of section 1788.11(b).

151. As a result of Defendants' violations of the RFDCPA, Plaintiff is entitled to an award of actual damages in an amount to be determined at trial, pursuant to Cal. Civil Code §§ 1788.17[10] and 1788.30(a).

152. As a result of Defendants' violations of the RFDCPA, Plaintiff is entitled to an award of statutory damages in an amount not to exceed one thousand dollars ($1,000) against each Defendant, pursuant to Cal. Civil Code § 1788.17.[11]

---

[10] 15 U.S.C. § 1692k(a)(1).
[11] 15 U.S.C.§ 1692k(a)(2)(A).

153.   As a result of Defendants' willful and knowing violations of the RFDCPA, Plaintiff is entitled to an award of a statutory penalty in an amount not less than one hundred dollars ($100) nor greater than one thousand dollars ($1,000) against each Defendant, pursuant to Cal. Civil Code § 1788.30(b).

154.   As a result of Defendants' violations of the RFDCPA, Plaintiff is entitled to an award of reasonable attorney's fees and costs, pursuant to Cal. Civil Code §§ 1788.17[12] and 1788.30(c).

155.   Pursuant to Cal. Civil Code § 1788.32, the remedies provided under the RFDCPA are intended to be cumulative and in addition to any other procedures, rights or remedies that Plaintiff may have under any other provision of law.

### SIXTH CAUSE OF ACTION
#### Negligent Misrepresentation
#### Against Top Applicant/Elevate

156.   Plaintiff realleges and incorporates by reference all the allegations set forth in each of the preceding paragraphs of the Complaint.

157.   Top Applicant/Elevate has engaged in acts or practices that constitute negligent misrepresentation. *See supra* ¶¶ 15-42.

158.   Top Applicant/Elevate prominently displayed these representations on its website, and in advertisements that implicitly and explicitly encourages members of the public to apply for enrollment and sign Leif ISAs.

159.   Top Applicant/Elevate had no reasonable grounds to believe that these representations were true.

160.   Top Applicant/Elevate intended that Plaintiff rely on these misrepresentations and omissions, as evidenced by Top Applicant/Elevate prominently featuring them on its website and in other widely disseminated

---

[12]  15 U.S.C.§ 1692k(a)(3).

platforms, as well as by its efforts to avoid disclosing the truth.

161.   Plaintiff was justified in relying upon these widely disseminated representations.  Had he known the truth, he would not have enrolled at Top Applicant/Elevate.

162.   Plaintiff has been substantially harmed by Top Applicant/Elevate's misconduct, which caused him to attend Top Applicant/Elevate and take out an ISA that indebted him for up to $17,000 in tuition.

**SEVENTH CAUSE OF ACTION**
**Unjust Enrichment**
**Against All Defendants**

163.   Plaintiff realleges and incorporates by reference all the allegations set forth in each of the preceding paragraphs of the Complaint.

164.   By their wrongful acts and omissions, Defendants were unjustly enriched at the expense of and to the detriment of Plaintiff.  Defendants were unjustly enriched as a result of the compensation they have received from the marketing and sale of the unlawful and unfair ISA to Plaintiff.

165.   Plaintiff seeks restitution from Defendants and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct.

166.   Plaintiff has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment against Defendants as follows:

**For the First Cause of Action (Declaratory and Injunctive Relief):**

a.     A declaration by the Court that Top Applicant/Elevate is not authorized to operate in the State of California;

b.     A declaration that Top Applicant/Elevate's income share agreements

COMPLAINT

signed by California borrowers are unlawful and unenforceable;

c.      Public injunctive relief restraining and enjoining Defendants from enforcing or collecting on any income share agreements with California borrowers, or, if Defendants are not the current owner of the ISAs, enjoin the current owner from collecting on any ISAs issued to California borrowers;

d.      For restitution and disgorgement of all monies wrongfully collected pursuant to unenforceable ISAs;

e.      For costs of suit;

f.      For attorneys' fees pursuant to Code of Civil Procedure section 1021.5; and

g.      For such other and further relief as the Court deems just and proper.

**For the Second Cause of Action (violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et. seq.*)**

a.      An award of actual damages to be established at trial pursuant to 15 U.S.C. § 1640(a);

b.      An award of statutory damages in the amount of twice the finance charge in accordance with 15 U.S.C. § 1640(a)(2), not to exceed $2,000;

c.      An injunction restraining and enjoining Defendants from violating any provision of TILA and regulation Z in connection with offering or extending credit;

d.      Award Plaintiff costs and reasonable attorney fees in accordance with 15 U.S.C. § 1640; and

e.      For such other and further relief as the Court deems just and proper.

**For the Third Cause of Action (Cal. Bus & Prof. Code § 17200):**

a.      For an order declaring that the business acts or practices complained of herein are unlawful and violate Cal. Bus & Prof. Code § 17200;

b.      For an order requiring Defendants to cancel all ISA agreements of any

past or present Top Applicant/Elevate student in California and refund those students for all payments he or she has made, or, if Defendants are not the current owner of those ISAs, order the owner to cancel or refund students for all ISA payments made;

c. For an order otherwise making full restitution of all monies wrongfully obtained from Defendants' violations of the UCL, as alleged in this Complaint;

d. For prejudgment interest;

e. For costs and reasonable attorney fees incurred by counsel for Plaintiff, including in accordance with California Code of Civil Procedure § 1021.5; and

f. For such other and further relief as the Court may deem just and proper under the circumstances.

**For the Fourth Cause of Action (Cal. Bus & Prof. Code § 17500):**

a. A declaration that the practices complained of herein are unlawful and violate Cal. Bus. & Prof. Code § 17500;

b. Awarding Plaintiff his damages in an amount to be determined at trial, including compensatory damages, consequential damages, punitive damages, and any other damages provided under relevant laws;

c. An order awarding Plaintiff attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5;

d. An order awarding Plaintiff pre-judgment and post-judgment interest, as allowed by law; and

e. Such further relief as may be appropriate.

**For the Fifth Cause of Action (Cal. Civ. Code § 1788 *et. seq*.):**

a. For actual damages in an amount to be determined at trial pursuant to

15 U.S.C. 1692(a)(1), which has been incorporated into state law by California Civil Code § 1788.17, and pursuant to Civil Code § 1788.30(a);

     b.    For an award of statutory damages of $1,000 against each Defendant pursuant to 15 U.S.C. 1692k(a)(2)(A), which has been incorporated into state law by California Civil Code § Civil Code § 1788.17;

     c.    Reasonable attorney fees and costs; and

     d.    Such other and further relief as the Court may deem just and proper under the circumstances.

**For the Sixth Cause of Action (Negligent Misrepresentation):**

     a.    For damages in an amount to be proven at trial;

     b.    For interest on the damages according to proof at the legal rate; and

     c.    For costs of suit incurred herein

**For the Seventh Cause of Action (Unjust Enrichment):**

     a.    Disgorgement of, restitution of, and/or imposing a constructive trust upon, the ill-gotten gains derived by Defendants from their unjust enrichment; and

     b.    For such other and further relief as may be appropriate.

**DEMAND FOR JURY TRIAL**

Based on the foregoing, Plaintiff hereby demand a jury trial for all claims so triable.


Dated: December 16, 2021

                             **THE SEQUOIA LAW FIRM**


                             */s/* Melody L. Sequoia
                             Melody L. Sequoia, Esq.
                             Attorney for Plaintiff

COMPLAINT